KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
JENNIFER J. McGRATH (SBN 211388)
   jmcgrath@kwikalaw.com
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Telephone: 310.566.9800
Facsimile: 310.566.9850

Attorneys for Defendant
ALLIANCE WHOLESALERS INC. DBA
PRODECO TECHNOLOGIES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| PEDEGO, LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>ALLIANCE WHOLESALERS INC. DBA PRODECO TECHNOLOGIES, a Florida Corporation,<br><br>Defendant. | CASE NO. SACV12-01106 CJC (JPRx)<br><br>**DEFENDANT PRODECO TECHNOLOGIES' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>[Declarations of Robert Provost, Robert Lindsay and Patricia Neal Filed Concurrently Herewith]<br><br>Date:          September 17, 2012<br>Courtroom:  9B<br>Time:          1:30 p.m.<br><br>**Before Hon. Cormac J. Carney**<br><br>Trial Date:          None Set |

*(left margin vertical text)* KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................. 1

II. STATEMENT OF FACTS ...................................................... 3

    A. Background ...................................................................... 3

    B. Prodeco Technologies Adopts Its Name in Good Faith ......... 3

    C. Trademark Application and Opposition From Pedego .......... 4

    D. The Importance of the Interbike Trade Show and the Harm Which Would Accrue to PT If It Were Barred from Attending or Using the PT Name ............................................................ 5

III. NO PRELIMINARY INJUNCTION SHOULD BE ISSUED BECAUSE PEDEGO CANNOT SHOW LIKELIHOOD OF SUCCESS ON THE MERITS, IRREPARABLE HARM, OR THAT THE BALANCE OF THE EQUITIES/PUBLIC INTEREST FAVORS AN INJUNCTION ................................................................. 6

    A. Pedego Is Highly Unlikely To Succeed On The Merits ......... 7

        1. Pedego Has Not Demonstrated A Likelihood Of Confusion ................................................................ 7

            a. The Sight, Sound and "Meaning" of the Two Marks Differ Significantly ........................................... 7

            b. The "Pedego" Mark Is In a Crowded Field ......... 9

            c. Pedego Presents *De Minimis* Admissible Evidence of Actual Confusion ............................................ 10

            d. Relatedness of the Goods/Marketing Channels and the Degree of Care Exercised By Different Types of Purchasers ...................................................... 13

            e. Defendant's Intent In Selecting Mark ................ 14

    B. Pedego Has Failed To Show That Irreparable Harm Is Likely ... 15

        1. There Can Be No Showing Of Irreparable Harm Where Pedego Delayed At Least One Year In Seeking An Injunction ............................................................. 16

        2. Pedego Provides No Evidence Of Irreparable Harm ... 18

    C. A Balancing of the Hardships/Equities Greatly Favors Defendant Prodeco Technologies ...................................................... 19

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

|   |   | 1. | Pedego's Delay Suggests that the Balance of the Hardships Strongly Favors PT | 20 |

1. Pedego's Delay Suggests that the Balance of the Hardships Strongly Favors PT .................................................................. 20

2. PT Will Not Remain Financially Viable If It Cannot Participate in the Interbike Tradeshow and Continue to Use the "Prodeco Technologies" Name ..................................... 20

D. A Preliminary Injunction Would Not Serve the Public Interest .......... 21

IV. A BOND IN THE AMOUNT OF $ 5 MILLION SHOULD BE REQUIRED TO BE POSTED BY PEDEGO IN THE EVENT THIS MOTION IS GRANTED ............................................................................ 22

V. CONCLUSION ................................................................................ 23

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page**

## CASES

A&M Records, Inc. v. Napster, Inc.,
  239 F.3d 1004 (9th Cir. 2001)........................................................23

Advanced Rotorcraft Technology, Inc. v. L-3 Communications Corp.,
  2007 WL 437682 (N.D.Cal., Feb. 6, 2007)....................................19

Alliance for the Wild Rockies v. Cottrell,
  632 F.3d 1127 (9th Cir. 2011)........................................................15

American Passage Media Corp. v. Cass Communications, Inc.,
  750 F.2d 1470 (9th Cir. 1985).......................................................18

AMF Inc. v. Sleekcraft Boats,
  599 F.2d 341 ..................................................................................7

Aurora World, Inc. v. Ty Inc.,
  719 F.Supp.2d 1115 (C.D. Cal. 2009)...........................................19

Brookfield Communications, Inc. v. West Coast Entertainment Corp.,
  174 F.3d 1036 (9th Cir. 1999)..................................................14, 15

Chesebrough-Pond's, Inc. v. Faberge, Inc.,
  666 F.2d 393 (9th Cir. 1982)..........................................................9

DEP Corp. v. Opti-Ray, Inc.,
  768 F.Supp. 710 (C.D.Cal. 1991)..................................................22

E. & J. Gallo Winery v. Gallo Cattle Co.,
  967 F.2d 1280 (9th Cir. 1992)........................................................14

eBay v. MercExchange, L.L.C.,
  547 U.S. 388 ..................................................................................15

Edge Games, Inc. v. Electronic Arts, Inc.,
  745 F.Supp.2d 1101 (N.D.Cal. 2010) ...........................................19

First Franklin Financial Corp. v. Franklin First Financial, Ltd.,
  356 F.Supp.2d 1048 (N.D.Cal. 2005) ......................................16, 20

Flexible Lifeline Systems, Inc. v. Precision Lift, Inc.,
  654 F.3d 989 (9th Cir. 2011)....................................................15, 19

Ford Motor Co. v. Ultra Coachbuilders Inc.,
  2000 WL 33256536 (C.D.Cal., July 11, 2000) .............................22

Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,
  826 F.2d 837 (9th Cir.1987)...........................................................9

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

*Givemepower Corp. v. Pace Compumetrics, Inc.,*
2007 WL 951350 (S.D. Cal. Mar. 23, 2007)............................................16

*GoTo.Com, Inc. v. The Walt Disney Co.,*
202 F.3d 1199 (9th Cir. 2000)............................................................7

*Groupion, LLC v. Groupon, Inc.,*
826 F. Supp.2d 1156; 2011 WL 5913992 ................................................8

*Halo Management, LLC v. Interland, Inc.,*
308 F. Supp.2d 1019 (N.D. Cal. 2003) ................................................10

*Illinois Tool, Inc. v. Grip-Pak, Inc.,*
906 F.2d 679 (Fed.Cir.1990)..........................................................22

*Innospan Corp. v. Intuit, Inc.,*
2010 WL 5157157 (N.D. Cal. Dec. 3, 2010) ..........................................17

*International Equity Investments, Inc. v. Opportunity Equity,*
2006 WL 1116437 (S.D.N.Y., Apr. 26, 2006)..........................................23

*International Jensen, Inc. v. Metrosound U.S.A., Inc.,*
4 F.3d 819 (9th Cir. 1993)............................................................22

*Johnson v. Couturier,*
572 F.3d 1067 (9th Cir.2009)..........................................................15

*Jupiter Hosting, Inc. v. Jupitermedia Corp.,*
2004 WL 3543299 (N.D. Cal. Nov. 9, 2004).............................................18

*Kerr Corp. v. North American Dental Wholesalers, Inc.,*
2011 WL 2269991 (C.D. Cal. June 9, 2011) ...........................................16

*Lewis Galoob Toys v. Nintendo of America, Inc.,*
1991 WL 1164068 (N.D.Cal., Mar. 27, 1991)..........................................22

*Metro Pub. v. San Jose Mercury News,*
987 F.2d 637 (9th Cir. 1993)..........................................................15

*Morningware, Inc. v. Hearthware Home Products, Inc.,*
673 F.Supp.2d 630 (N.D.Ill. 2009) ...................................................12

*Network Automation, Inc. v. Advanced Systems Concepts, Inc.,*
638 F.3d 1137 (9th Cir. 2011)..........................................................13

*Oakland Tribune, Inc. v. Chronicle Pub. Co.,*
762 F.2d 1374 (9th Cir.1985)..........................................................16

*Patriot Contract Services v. U.S.,*
388 F.Supp.2d 1010 (N.D.Cal. 2005) .................................................19

*Pharmacia Corp. v. Alcon Laboratories, Inc.,*
201 F. Supp. 2d 335 (D.N.J. 2002) ...................................................18

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL. 310.566.9800 • FAX 310.566.9850

PRODECO TECHNOLOGIES' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

*Quia Corp. v. Mattel, Inc.,*
     2010 WL 2486364 (N.D. Cal. June 15, 2010) ................................... 9

*Rearden LLC v. Rearden Commerce, Inc.,*
     683 F.3d 1190 (9th Cir. 2012) ...................................................... 11

*Reebok Intern. Ltd. v. J. Baker, Inc.,*
     32 F.3d 1552 (Fed.Cir.1994) ......................................................... 19

*Rescuecom Corp v. Google, Inc.,*
     562 F.3d 123 (2d Cir. 2009) .......................................................... 12

*Rodan & Fields, LLC v. Estee Lauder Companies, Inc.,*
     2010 WL 3910178 (N.D. Cal. Oct. 5, 2010) .................................... 18

*Sardi's Restaurant Corp. v. Sardie,*
     755 F.2d 719 (9th Cir. 1985) ......................................................... 19

*Seed Services, Inc. v. Winsor Grain, Inc.,*
     2012 WL 1232320 (E.D. Cal.) ....................................................... 15

*Stertz v. Gulf Oil Corp.,*
     1984 WL 2114 (E.D.N.Y., June 14, 1984) ...................................... 23

*Surfvivor Media, Inc. v. Survivor Productions,*
     406 F.3d 625 (9th Cir. 2005) ........................................................... 9

*The Research Foundation of State University of New York v. Mylan,*
     723 F.Supp.2d 638 (D.Del. 2010) ................................................. 23

*Winter v. Natural Resources Defense Council, Inc.,*
     555 U.S. 7 (2008) .......................................................... 7, 15, 19, 21

## STATUTES

Federal Rule of Civil Procedure 65(c) .......................................................... 22

Federal Rule of Evidence 902 ....................................................................... 11

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

PRODECO TECHNOLOGIES' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

I.   **INTRODUCTION**

This Motion is nothing more than a transparent attempt by Plaintiff Pedego, LLC to damage Defendant Prodeco Technologies ("PT"), a more successful and profitable competitor in the electric bicycle business. The Motion is based on a meritless underlying claim of purported "similarity" between two dissimilar marks, as well as conclusory assertions of "harm," unsupported by admissible evidence of any kind.

Pedego will not succeed on the merits in its underlying suit – as it does not and cannot show that there is a likelihood of confusion between the companies' two distinct names and logos. Pedego asserts that there is a likelihood of confusion because the names both "begin with a P and end with O." In fact, as the names are made up of different, distinguishable prefixes and suffixes and are visually and aurally distinct as they appear in the marketplace, this minor similarity does not create a likelihood of confusion. Nor is Pedego's *de minimis* "evidence" of actual confusion sufficient, consisting as it does of Pedego's demonstrably inaccurate conjecture.

By this Motion, Pedego seeks an injunction to stop PT from using its name in connection with electric bikes, including barring it from appearing and selling its bikes at the September 19-21, 2012 Interbike Tradeshow, a large industry tradeshow where bicycle shop owners and dealers place their yearly orders for bikes. What Pedego fails to inform the Court is that it and PT had booths just a few aisles from each other (and visible to each other) at the last Interbike tradeshow – in September 2011. Pedego has been aware of Prodeco Technologies' use of the Prodeco name on electric bikes and has known that PT sells its wares at Interbike for over a year. Pedego and PT even engaged in informal negotiations to get this matter settled during the spring and summer of 2011, before the last Interbike show. Yet, Pedego chose to wait until a few weeks before the Interbike 2012 show (when PT has already spent tens of thousands of dollars to participate and purchase a sponsorship

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   at Interbike) to bring this motion on shortened time.  Pedego glosses over this

2   lengthy delay, but the delay alone negates any assertion by Pedego that it will suffer

3   irreparable harm if the requested injunction is not granted.

4          Moreover, the Court must look to the balance of the equities between the

5   parties in evaluating whether to issue an injunction.  Pedego's Motion is entirely

6   bereft of any facts evidencing lost or declining sales or any reputational harm due to

7   the claimed confusion between the two companies' names.  Pedego claims – in the

8   vaguest generalities – that PT's appearance at Interbike will cause increased

9   confusion, but never sets forth any damage which it has suffered or anticipates that

10  it will suffer as a result of this "confusion."

11         On the other hand, being barred from Interbike would not be a minor nuisance

12  for PT, but rather would spell the demise of the company.  Interbike is the only

13  show that PT participates in during the year and is the source of upwards of 70% of

14  its sales, to the tune of millions of dollars.  PT has already paid deposits of almost

15  $300,000 to suppliers for orders that (without participation at Interbike) it would

16  lack the cash flow to fulfill.  The harm to its reputation from dropping out of the

17  major tradeshow of the year would also be substantial.  PT would also be unable to

18  service its roughly $2.4 Million in debt should it not attend Interbike.  And, of

19  course, being further barred – for even a short period – from using the name more

20  generally would also spell the end of PT's business.

21         In sum, Pedego does not demonstrate any likelihood of confusion between the

22  parties' names and logos.  Moreover, a more than one year delay in seeking this

23  injunction (as well as the timing of seeking it a few weeks before an important trade

24  show which Plaintiff knew that Defendant attends) severely undercuts any argument

25  that Plaintiff will be irreparably harmed.  Defendant PT will be financially

26  devastated (and likely go out of business) should the requested injunction be issued.

27  The public interest is not served by destruction of legitimate competition, which is

28  what Pedego seeks here.

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

## II.   STATEMENT OF FACTS

### A.   Background

Electric bicycles are traditional bicycles that have a battery-operated motor attached to them.  Provost Decl. ¶ 2.  This configuration allows the rider the choice of pedaling or "coasting," the bicycle being propelled by the electric motor.  *Id.*

Defendant PT was created in or about early 2010 as a d/b/a of Alliance wholesalers, a bicycle parts company.  Provost Decl. ¶ 4.  PT manufactures predominantly "mountain bike" style electric bikes (with aggressive designs and narrow handlebars that are situated in a low-riding position) which it markets primarily to a young, under-35 demographic.  *Id.* at ¶ 10.  The majority of the company's bike designs are geared toward younger riders.  All of PT's bicycles are built in the United States from uniquely designed frames and battery systems.  *Id.* at ¶ 8.  The fact that PT bikes are built in U.S. is a major selling point for the bikes as customers view American-built bikes as higher quality and more reliable.  *Id.*

In contrast, Plaintiff Pedego primarily sells "beach cruiser" style bicycles (which feature wide sloped handlebars, with a pedal forward crank design for a "sit up" and "laid back" riding position), which are marketed to customers in their fifties and beyond.  Provost Decl. ¶ 12.  Pedego bikes are manufactured in China and Taiwan and imported into the United States.  *Id.* at ¶ 11.

### B.   Prodeco Technologies Adopts Its Name in Good Faith

PT founder Robert Provost had previously been involved (in or about 2006) with a bike company referred to as "Eco Tech."  Provost Decl. ¶ 3.  The name "Prodeco Technologies" simply added the prefix "prod" to the name of Mr. Provost's prior company, "Eco Tech."  *Id.* at ¶ 4.  The new "Prodeco" name was also a combination of the last names of the company's founders– "**Pro**vost", "**De**l Aguila" (for Daniel DeAguila) and "A**co**sta" (for Richard Acosta).  *Id.* at ¶ 5.  The name is also a play on the term "deco" as in "art deco."  *Id.*  The company (which is located in South Florida – the epicenter of the art deco design movement) creates

1    bike designs with elements of "art deco" design, including curved frames.  *Id.*

2    Finally, PT's founders chose "Prodeco" because it incorporated the suffix "eco"

3    (short for "ecological").  *Id.* at ¶ 6.

4           **C.**    **Trademark Application and Opposition From Pedego**

5         On or about February 24, 2011, PT applied for a trademark registration for

6    "Prodeco Technologies" with the United States Patent and Trademark Office.

7    Provost Decl. ¶ 14.  On or about February 15, 2011 and again on or about March 15,

8    2011, Pedgeo contacted PT via letter, alleging infringement of the Pedego mark.  *Id.*

9    at ¶ 15.  Pedego included a draft complaint for trademark infringement with its

10   March 15, 2011 letter to Prodeco.  Pedego went on to submit a letter of protest to the

11   U.S.P.T.O. on or about May 24, 2011.  *Id.*

12        On or about July 6, 2011, during the course of e-mail correspondence

13   between PT CEO Provost and Steven Fine, examining attorney at the U.S.P.T.O,

14   Mr. Fine stated that, with regard to the marks "Pedego" and "Prodeco

15   Technologies," "in my opinion, there is no likelihood of confusion."  Provost Decl.

16   ¶ 16.

17        PT engaged in informal discussions with Don DiCostanzo (and even utilized a

18   third party acquaintance named Leo Giglio to act as an intermediary and speak with

19   Mr. DiCostanzo) throughout the spring and summer of 2011 regarding his claim that

20   "Prodeco" infringed Pedego's mark.  Provost Decl. ¶ 20.  By July 2011, as an

21   accommodation to try and resolve this case (and not because PT believes that there

22   was any similarity or likelihood of confusion between the two names), PT agreed to

23   add the word "Technologies" to its bikes, ads and website wherever the word

24   "Prodeco" appeared (so that the word "Prodeco" never appeared alone).  *Id.*  PT

25   made that change to its bike frames, ads and websites at significant expense to try

26   and get this issue resolved.  *Id.*

27        On or about December 12, 2011, PT abandoned its original trademark

28   application after it determined that an error had been made in its supporting

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

4

1  documents. Provost Decl. ¶ 17. The abandonment lasted less than 1 day. *Id.* at

2  ¶ 18. PT filed a petition to revive its application to register "Prodeco Technologies"

3  on that same day – December 12, 2011. *Id.*

4    Pedego filed an Opposition to the revived application on April 27, 2012 and

5  pursued its Opposition until the matter was requested stayed pending the outcome of

6  this lawsuit, which was filed by Pedego July 6, 2012. Provost Decl. ¶ 19. Pedego

7  did not make this Motion for a preliminary injunction until September 4, 2012, two

8  months after its trademark infringement lawsuit was filed.

9  **D.    The Importance of the Interbike Trade Show and the Harm Which**

10  **Would Accrue to PT If It Were Barred from Attending or Using**

11  **the PT Name**

12    The Interbike tradeshow is the major annual tradeshow in the bike industry.

13  Its purpose is for bike shop owners, dealers and mass merchant buyers to come

14  together to review all the new products available each year in the U.S. bike industry.

15  Provost Decl. ¶ 30. Exhibitors display their products for the coming year and take

16  orders for those products. *Id.* There is no other event of this type in the United

17  States. *Id.* PT attended Interbike in 2010 and 2011. *Id.* at ¶ 31. At the show in

18  2010, PT had a prominent 4 booth display. *Id.* At the 2011 show, PT had a booth a

19  few aisles from (and visible to) Pedego's booth. Mr. DiCostanzo of Pedego came

20  over to the PT booth at the 2011 show and took photographs of PT's booth and of

21  PT bikes. *Id.*

22    Last year the majority of PT's dealer sales (including sales from large dealers

23  such as Amazon and Costco) were generated from Interbike. Provost Decl. ¶ 32.

24  PT anticipates that over 70% of its sales will be generated from Interbike 2012. *Id.*

25  In addition, PT is sponsoring the "demo track" at Interbike. *Id.* at ¶ 33. The demo

26  track is a riding track for all electric bike companies to allow potential bike shop

27  owners to test and ride the different electric bikes being offered. *Id.* Prodeco

28  Technologies  will also appear at an electric bike industry panel discussion. *Id.* In

Kinsella Weitzman Iser Kump & Aldisert LLP
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel. 310.566.9800 • Fax 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  addition, multiple meetings at Interbike have been set up with PT's dealers, both

2  large and small. *Id.* These meetings will generate thousands of sales for PT. *Id.*

3      With Interbike just days away, there is no way that PT could appear at

4  Interbike if it could not use its name, "Prodeco Technologies," on its bikes and

5  advertising. Provost Decl. ¶ 36.

6      As discussed in detail at Section C.2, *supra*, PT has already spent, or will

7  spend, over $90,000 on direct expenses relating to the Interbike show, including

8  travel and advertising costs. Provost Decl. ¶ 34. PT has increased its employee

9  base to 48 employees from 35 employees 4 months ago in anticipation of the influx

10  of orders from attending Interbike 2012. *Id.* at ¶ 35. For 2013, PT anticipates the

11  hiring of an additional 26 employees to bring the total to 74 company employees. all

12  U.S. based. *Id.*

13      If barred from participating in Interbike or using the PT name going forward,

14  PT will lose the vast majority of its projected $1.65 Million in net sales for model

15  year 2013, will lose $400,000 in sunk costs already expended for the model year

16  (and in connection with the Interbike show) and will be unable to service its

17  approximately $2.4 Million in debt. Provost Decl. ¶¶ 34, 37-38. The reputational

18  harm of being barred from Interbike will greatly diminish or eliminate sales through

19  other channels. *Id.* In addition, if the company were to become insolvent, its

20  founders and investors would lose some $3 Million that they have already invested

21  to establish and grow PT. *Id.* at ¶ 40.

22  **III.**  **NO PRELIMINARY INJUNCTION SHOULD BE ISSUED BECAUSE**

23      **PEDEGO CANNOT SHOW LIKELIHOOD OF SUCCESS ON THE**

24      **MERITS, IRREPARABLE HARM, OR THAT THE BALANCE OF**

25      **THE EQUITIES/PUBLIC INTEREST FAVORS AN INJUNCTION**

26      To obtain the extraordinary remedy of a preliminary injunction, a plaintiff

27  "must establish that he is likely to succeed on the merits, that he is likely to suffer

28  irreparable harm in the absence of preliminary relief, that the balance of equities tips

KINSELLA WEINZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL. 310.566.9800 • FAX 310.566.9850

1 in his favor, and that an injunction is in the public interest." *Winter v. Natural*
2 *Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).  A preliminary injunction is
3 an "extraordinary remedy never awarded as of right." *Id.* at 24.

      4      **A.**   **Pedego Is Highly Unlikely To Succeed On The Merits**

      5        **1.**   **Pedego Has Not Demonstrated A Likelihood Of Confusion**

6 The 9th Circuit has developed eight factors, the so-called *Sleekcraft* factors, to
7 guide the determination of a likelihood of confusion. *AMF Inc. v. Sleekcraft Boats*,
8 599 F.2d 341, 348.  They include (1) the similarity of the marks; (2) the proximity/
9 relatedness of the two companies' goods; (3) the marketing channels used; (4) the
10 strength of Pedego's mark; (5) PT's intent in selecting its mark; (6) evidence of
11 actual confusion; (7) the likelihood of expansion into other markets; and (8) the
12 degree of care likely to be exercised by purchasers. *See id.* at 348–49.  Analysis of
13 the pertinent factors here weighs heavily in PT's favor and against the imposition of
14 an injunction.

     15      **a.**   **The Sight, Sound and "Meaning" of the Two Marks**
     16           **Differ Significantly**

17 Pedego gives short shrift to any discussion of similarity between the two
18 marks, stating in a conclusory fashion that the two names start with "P" and end in
19 "O." Motion, 3:23-25.  That is far from adequate to demonstrate a likelihood of
20 consumer confusion that justifies the imposition of an injunction (especially one that
21 would financially devastate the Defendant).

22 The Ninth Circuit has provided the following guidance in assessing similarity
23 of marks: "first, the marks must be considered in their entirety and as they appear in
24 the marketplace [citation omitted]; second, similarity is adjudged in terms of
25 appearance, sound, and meaning [citation omitted]; and third, similarities are
26 weighed more heavily than differences [citation omitted]." *GoTo.Com, Inc. v. The*
27 *Walt Disney Co.*, 202 F.3d 1199, 1205–06 (9th Cir. 2000).
28 Pedego claims that PT's mark is so similar to Pedego's mark that it will cause

1 | consumers to be confused as to the source of electric bikes and advertising bearing
2 | the marks. The marks are very different, however, consisting of entirely distinct,
3 | commonly used prefixes and suffixes, including "ped" (as in "pedal") and "go"
4 | versus "pro" and "deco" (as in "art deco") or "eco" (as in "ecological"). *See*
5 | *Groupion, LLC v. Groupon, Inc.*, 826 F. Supp.2d 1156, 1163-1164; 2011 WL
6 | 5913992 (court denied injunction, finding "GROUPON and "GROUPION" marks
7 | dissimilar as "[b]oth 'groupon' and 'groupion'" are made up words. However, they
8 | were created by different words and, thus, imply different meanings."). The word
9 | "Prodeco" does not incorporate any portion of the word "Pedego." Significantly,
10 | PT's mark is "Prodeco Technologies" and includes the word "technologies," which
11 | is not part of Pedego's mark[1].

Moreover, as they actually appear in the marketplace, the parties' two logos are dissimilar. "Prodeco Technologies" is in black letters with a red square next to the "P." "Pedego" is in a different, distinctive font and the letters are orange in color. Thus, the actual appearance of the two marks in the marketplace shows substantial differences as to color, font and position of the text:

 

Courts have routinely denied preliminary injunctions in instances involving far more similar marks, where (as here) those marks were used in logos with different fonts, colors and textual layouts. *See Groupion*, 826 F. Supp.2d at 1163-1164 (court denied injunction because "GROUPON and "GROUPION" marks were

---

[1] PT has used the word "Prodeco" alone as a mark on its products and advertising until late 2011. It is now, however, using "Prodeco Technologies" or "Prodeco Tech" on its products, website and advertising. Provost Decl. ¶ 20.

PRODECO TECHNOLOGIES' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  dissimilar "when viewed in their entirety and as they appear in the marketplace"),

2  *Quia Corp. v. Mattel, Inc.*, 2010 WL 2486364 (N.D. Cal. June 15, 2010) (court

3  denied preliminary injunction for mark "iXL" because it appeared differently in the

4  marketplace than plaintiff's "IXL" mark.); *see also, Surfvivor Media, Inc. v. Survivor

5  Productions*, 406 F.3d 625, 633 (9th Cir. 2005) (recognizing importance of logos and

6  "distinctive" slogans that may accompany a mark in distinguishing between

7  "Surfvivor" and "Survivor" marks); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,

8  826 F.2d 837, 846 n. 14 (9th Cir.1987) ("Use of . . . distinctive logos in connection

9  with similar marks can reduce the likelihood of confusion . . . .") (internal citations

10 omitted).

11      Moreover, the marks at issue in this case are aurally distinct and sound

12 different when pronounced.  Even if they did sound alike (which they do not), the

13 mere fact that the two marks may sound similar when pronounced or have the same

14 number of syllables is not determinative.  *See Chesebrough-Pond's, Inc. v. Faberge,

15 Inc.*, 666 F.2d 393 (9th Cir. 1982) (court dismissed plaintiff's claim on summary

16 judgment that the use of the mark "Match" for men's toiletries and cosmetics

17 infringed defendant's mark "Macho").

18              **b.    The "Pedego" Mark Is In a Crowded Field**

19      Although both "Pedego" and "Prodeco" are coined words that do not have

20 meaning in the English language, they both nonetheless contain prefixes and

21 suffixes that are common components of company names in the bicycle and electric

22 vehicles markets.  Provost Decl. ¶¶ 22-23.  According to an industry website, there

23 are 526 electric bike manufacturers worldwide whose company names begin with

24 "P," including "Pegasus" "Promovec" and "Protanium" and several similar

25 businesses with names containing the prefixes or suffixes "ped" "eco," and "go[2]":

26 _____

27 [2]  In fact, Pedego was sued for trademark infringement in 2011 by a company called
   "GoPed."  Provost Decl. ¶ 24.

28

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1 | including:

2 | Electric Peddler          www.electricpeddler.com

3 | Eco Wheelz              www.eco-wheelz.com

4 | Geco Bike Company     www.gecobike.com

5 | Eco Speed              www.ecospeed.com

6 | Eco Boomer             www.ecoboomer.tv

7 | EZ Pedaler             www.ezpedaler.com

8 | Pedaleco               www.pedaleco.ueuo.com (bike tour company)

9 | Peg Perego             http://us.pegperego.com (electric cart manufacturer)

10 | eGO Vehicles           http://www.egovehicles.com

11 | Provost Decl. ¶¶ 22-23.

12 | That the electric bike market has numerous "ped" and "go" marks militates

13 | against a finding that Pedego is a strong mark or that there is a likelihood of

14 | consumer confusion between the Pedego mark and Defendant's mark. *Jupiter*, 2004

15 | WL 3543299, at *4 ("Where a plaintiff's mark resides in a crowded field, 'hemmed

16 | in on all sides by similar marks on similar goods,' that mark is weak as a matter of

17 | law."); *see also, Halo Management, LLC v. Interland, Inc.*, 308 F. Supp.2d 1019,

18 | 1036-37 (N.D. Cal. 2003) (denying preliminary injunction as "[d]ozens of

19 | companies utilize some variant of the 'halo' term'".)

20 | Finally, the U.S.P.T.O examining attorney handling PT's trademark

21 | application has stated that, "in [his] opinion, there is no likelihood of confusion"

22 | between the two names.  Provost Decl. ¶ 16.

23 |                    c.    **Pedego Presents *De Minimis* Admissible Evidence of**

24 |                         **Actual Confusion**

25 | Pedego claims that "Plaintiff Pedego's customers and defendant Prodeco's

26 | customers have admitted their confusion in e-mail, online publications, telephone

27 | calls and advertisements."  Motion, 4:25-26.  This assertion is far from accurate.

28 | Pedego has attached several exhibits to the Declaration of Don DiCostanzo which

1 purport to demonstrate actual consumer confusion. However, this "evidence" of
2 actual confusion (to the extent it is admissible at all) is extremely weak and, frankly,
3 misleading when examined closely.

4     Exhibit "D" purports to be a "phone log" evidencing phone calls to Pedego
5 "of people seeking information on Prodeco." DiCostanzo Decl. ¶ 10. Exhibit "D"
6 thus consists of lists of phone numbers, some portions of which are highlighted with
7 no explanation as to who the callers were, what they said or to whom they said it.
8 *See* pages 15-16 of 33. The first page of Exhibit "D" is nothing more than a self-
9 serving description of a call with a supposed consumer in which the Pedego
10 employee writing the log entry suggests to the caller that he "probably had us
11 confused with a company with a similar name." It is unclear whether
12 Mr. DiCostanzo or someone else wrote this contrived log entry and whether in fact
13 it was made contemporaneously within the course of business. Fed. R. of Ev. 902
14 (11), (12).

15     Nor is Exhibit "E" any more convincing that actual confusion exists between
16 the parties' products. Exhibit "E" consists of one e-mail (page 18 of 33) in which a
17 consumer asks whether Pedego will "do repairs on" a Prodeco bike. It is entirely
18 unclear whether this consumer is confused about the two companies or simply wants
19 to know whether Pedego will service a Prodeco Technologies bike. The very fact
20 that this consumer is making the inquiry arguably suggests that he <u>does</u> know that
21 there is a difference between the two companies.

22     The next several e-mails which make up Exhibit "E" purport to be order
23 forms and inquiries from bike dealers which were misdirected to Pedego when they
24 were meant to be sent to PT. These e-mails are not persuasive evidence of *actual*
25 *customer* confusion for several reasons. First, at least two of the e-mails (pg. 19-22
26 of 33) are from <u>bike dealers and bike store owners</u>. Confusion among such
27 individuals, who are not consumers, is only relevant in limited circumstances, where
28 it raises an inference that consumers are likely to be confused. *Rearden LLC v.*

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   *Rearden Commerce, Inc.*, 683 F.3d 1190, 1214-1215 (9th Cir. 2012). Here, the

2   e-mails may have been misdirected, i.e., there may simply have been confusion as to

3   the parties' e-mail addresses (but not with respect to the source of the parties'

4   products). Pedego's exhibits thus fail to adequately demonstrate that actual

5   consumers are likely to be confused regarding the source of the parties' goods.

6          Additionally, PT is informed and believes that Pedego pays Google AdWords

7   to use "Prodeco" as a keyword. Provost Decl. ¶¶ 26-28. Stated another way,

8   Pedego has had an arrangement with Google whereby if Google users do an internet

9   search on the word "Prodeco" (seeking Defendant's products), an ad for Pedego

10  pops up on the user's screen. *Id.* If the user clicks on Pedego's ad, Pedego pays a

11  fee to Google. *Id.* This arrangement between Pedego and Google could easily

12  explain why e-mails intended for PT may have been misaddressed to Pedego[3].

13         Similarly, Exhibit "F" to Mr. DiCostanzo's Declaration is not evidence of any

14  actual confusion. Exhibit "F" is merely an article about electric bikes generally that

15  discusses Pedego and features an interview with Mr. DiCostanzo. Pedego asserts

16  that the article confuses Pedego and PT because it features a picture of a Prodeco

17  bike (at pg. 30 of 33) in addition to a picture of a Pedego bike (at pg. 28 of 33).

18  Pedego is incorrect that the placement of the PT bike photo in the article means that

19  the authors of the article were confused. On the contrary, the article is about electric

20  bikes in general and the authors contacted the Light Electric Vehicle Association

21  expressly to obtain a picture of **any** electric bikes. The Light Electric Vehicle

22  Association provided the authors with a picture of a PT bike. *See* Provost Decl.,

23  _____

24  [3] Several courts have found that the use of Google AdWords creates, or potentially creates, confusion. *See Morningware, Inc. v. Hearthware Home Products, Inc.*, 673

25  F.Supp.2d 630 (N.D.Ill. 2009) (holding that the use of a competitor's trademark in Google's AdWords stated a claim for initial interest confusion); *Rescuecom Corp v.*

26  *Google, Inc.*, 562 F.3d 123 (2d Cir. 2009) (Second Circuit held that the use of a trademark in Google Ad-Words constitutes a "use in commerce" and remanded the

27  case to determine whether the use of the trademark is likely to cause consumer confusion). *Id.* at 130.

28

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1    ¶ 29, Exh. L.  <u>There was clearly no confusion here</u>.

2    Exhibit "G" – which purports to be copies of one or more classified ads – also

3    fails to demonstrate consumer confusion regarding the parties' bikes.  The first ad

4    (pg. 32 of 33) merely contains what appears to be a typographical error relating to

5    the parties' names.  The second ad (pg. 33 of 33) is clearly not evidence of confusion

6    either.  Rather, the seller states that he rode a PT bike and did not like it, <u>but that</u>

7    <u>buyers will like the Pedego bike that he is selling</u>.  *See* Exhibit "G" ("I rode about 6

8    different brands before I finally chose this bike – it is so comfortable and

9    ergonomically correct.  I was sold on the Prodeco and rode every one of them . . . I

10   felt sore after just a short ride around the parking lot on every one of their models.  I

11   suggest you ride before buying.  Once you take mine for a spin you will be happy to

12   spend the extra cash, just like I was. . . .").  This ad in no way suggests that the seller

13   is confused about the source or origin of the bike he is selling.

14   In contrast to Pedego's continued "evidence" of actual confusion, neither of

15   PT's employees who handle customer service calls have ever received any inquiries

16   from any caller regarding Pedego.  *See* Declaration of Robert Lindsay ("Lindsay

17   Decl.") ¶ 3; Declaration of Patricia Neal ("Neal Decl.") ¶ 3.  Nor has PT CEO

18   Robert Provost ever been contacted by a consumer or dealer looking to purchase

19   Pedego bikes, accidentally believing that PT was affiliated with Pedego.  Provost

20   Decl. ¶ 25.

21   **d.      Relatedness of the Goods/Marketing Channels and the**

22   **Degree of Care Exercised By Different Types of**

23   **Purchasers**

24   Although the parties use similar channels – trade shows, internet sales, etc. to

25   market their bikes, <u>the two companies' bike designs are distinct and each parties'</u>

26   <u>designs and ads are directed toward different segments of the electric bike</u>

27   <u>purchasing public</u>.  *See Network Automation, Inc. v. Advanced Systems Concepts,*

28   *Inc.*, 638 F.3d 1137, 1150 (9th Cir. 2011) (relatedness of goods is measured by

10710.00002/137407.2

13

1   whether the products are: (1) complementary; (2) sold to the same class of

2   purchasers; and (3) similar in use and function).

3        PT's bikes are "mountain bike" style bikes that are marketed primarily to

4   young (under 50 year-old) consumers. Provost Decl. ¶ 10. In fact, PT's 2012

5   catalog did not feature any models over age 35. *Id.* PT's bikes are entirely built in

6   the U.S., a major selling point for PT's bikes. *Id.* at ¶ 8. In contrast, Pedego's bikes

7   are "beach cruiser" style and marketed to older riders. *See* DiCostanzo Decl. ¶ 12,

8   Exh. F (pg. 28 of 33); Provost Decl. ¶ 12. Pedego's bikes are foreign manufactured.

9   Provost Decl. ¶ 11. The retail prices of each party's bikes also differ; PT's bikes sell

10  for an average of $1200 and Pedego's sell for between $1800 and $2700. *Id.* at ¶ 13.

11       Moreover, regardless of the price difference between the parties' bikes, <u>both</u>

12  parties' electric bikes are relatively high priced goods and this militates against a

13  finding that consumers will be confused by the parties' two marks. When

14  purchasing expensive items, the buyer is expected to be more discerning and less

15  easily confused. *Brookfield Communications, Inc. v. West Coast Entertainment*

16  *Corp.*, 174 F.3d 1036, 1060 (9th Cir. 1999); *see also E. & J. Gallo Winery v. Gallo*

17  *Cattle Co.*, 967 F.2d 1280, 1293 (9th Cir. 1992) ("When goods are expensive, it is

18  assumed that buyers will exercise greater care in their purchases.").

19          e.    <u>Defendant's Intent In Selecting Mark</u>

20       PT selected its mark in good faith and with no intent to imitate Pedego's mark

21  or trade on the purported goodwill of Pedego. PT's founders created the mark in or

22  about 2010 as a variant of founder Robert Provost's former company, "Eco Tech"

23  and as a combination of their last names – "**Pro**vost", "**De**l Aguila" and "A**co**sta."

24  Provost Decl. ¶ 5.

25       Pedego's assertions in its Motion that PT's selection of its mark was "willful"

26  are baseless. Pedego did contact PT to make it aware of its trademark infringement

27  claim, but it is undisputed that that contact occurred by May 2011, long after PT had

28  selected its name and used it in connection with electric bikes. DiCostanzo Decl.

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

¶ 5, Provost Decl. ¶ 15.  Nor is there any truth to assertion that Prodeco abandoned its trademark application "after learning of Pedego."  Motion, 6:12-13.  Rather, Prodeco abandoned its application in December 2011 (some ten months after Pedego first contacted it and seven months after Pedego filed a letter of protest to PT's trademark application) because of a clerical error.  It re-filed that same day.  Pedego was aware of the re-filing and opposed in April 2012.  Provost Decl. ¶¶ 17-19.

Clearly, there is no evidence supporting the notion that PT acted willfully or in bad faith. *See Brookfield*, 174 F.3d at 1059 ("This factor favors the plaintiff where the alleged infringer adopted his mark with knowledge, actual or constructive, that it was another's trademark.").

## B.  Pedego Has Failed To Show That Irreparable Harm Is Likely

The U.S. Supreme Court's decision in *Winter* made clear that <u>a plaintiff must show irreparable harm to be likely, not merely possible or potential</u>[4].  *See eBay v. MercExchange, L.L.C.*, 547 U.S. 388, 392-394 (no presumption of irreparable harm even where there is a showing of infringement); *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (emphasis added); *Johnson v. Couturier*, 572 F.3d 1067, 1081 (9th Cir.2009) (holding that a mere possibility of irreparable injury is "too lenient").  In this case, even if there were a likelihood of confusion (which there is not), the clear lack of irreparable harm undermines any claim that a preliminary injunction should issue.

---

[4]  Pedego cites to *Metro Pub. v. San Jose Mercury News*, 987 F.2d 637, 640 (9th Cir. 1993) for the proposition that irreparable harm is "ordinarily presumed" where plaintiff has demonstrated a likelihood of confusion.  However, more recent case law has "cast doubt on that presumption."  *See Seed Services, Inc. v. Winsor Grain, Inc.*, 2012 WL 1232320 (E.D. Cal.); *see also, Flexible Lifeline Systems, Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 994 (9th Cir. 2011) (presumption of irreparable harm in issuing injunctive relief in copyright context is "dead").

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1.   **<u>There Can Be No Showing Of Irreparable Harm Where</u>**
**<u>Pedego Delayed At Least One Year In Seeking An</u>**
**<u>Injunction.</u>**

Where there is delay in seeking a preliminary injunction, courts find that there is no irreparable harm and no need for the requested relief. *Kerr Corp. v. North American Dental Wholesalers, Inc.*, 2011 WL 2269991, at *3 (C.D. Cal. June 9, 2011) (denying preliminary injunction where plaintiff waited eight months after learning of infringement to seek relief); *Givemepower Corp. v. Pace Compumetrics, Inc.*, 2007 WL 951350, at *7 (S.D. Cal. Mar. 23, 2007) (holding delay of seven weeks negated showing of irreparable harm); *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir.1985) (affirming denial of preliminary injunction based on delay alone, without assessing the likelihood of success on the merits); *First Franklin Financial Corp. v. Franklin First Financial, Ltd.*, 356 F.Supp.2d 1048, 1055 (N.D.Cal. 2005) (denying motion for preliminary injunction and stating "plaintiffs . . . delay in enforcing its intellectual-property rights undercuts its claims of urgency and irreparable harm").

Here, it is undisputed that Pedego was aware that PT was using the Prodeco mark on bikes by May 23, 2011, when Pedego filed a Letter of Protest regarding PT's trademark application. DiCostanzo Decl. ¶¶ 3-4. Pedego had actually first contacted PT regarding its use of the mark "Prodeco" in February 2011. Provost Decl. ¶ 15. Pedego and PT attempted to negotiate a resolution of Pedego's claims during the spring and summer of 2011. *Id.* at ¶ 20. Pedego was also aware that Prodeco attended the September 2011 Interbike show and sold bikes bearing its mark at that show. DiCostanzo Decl. ¶ 3. <u>In fact, at the September 2011 Interbike show, Pedego and Prodeco had booths that were nearby and visible to one another at the venue.</u> Provost Decl. ¶ 31. Yet, Pedego waited over a year, until the eve of the next Interbike show to file the instant motion.

Not only was Pedego aware for over a year that PT was selling bikes and

1  appearing at trade shows, Pedego filed suit on July 6, 2012, but still did not move

2  for an injunction until two months later – filing this Motion on September 4, 2012.

3  This additional delay between the filing of its suit and seeking an injunction further

4  negates any finding of irreparable harm to Pedego. *See Innospan Corp. v. Intuit,*

5  *Inc.,* 2010 WL 5157157, at *2 (N.D. Cal. Dec. 3, 2010) (denying preliminary

6  injunction and noting plaintiff delayed seeking relief for one month after filing

7  complaint).

8          In its Motion, Pedego is disingenuous in trying to explain its delay.  First, it

9  claims that it believed PT had abandoned its mark as of December 2011.  See

10  DiCostanzo Decl. ¶ 6.  This is demonstrably false.  PT originally filed its trademark

11  application in February 2011, but made a clerical error and abandoned that

12  application in December 2011[5].  However, Prodeco revived the application on the

13  same day it was abandoned in December 2011.  Pedego opposed the revived

14  application in April 2012.  Provost Decl. ¶¶ 17-19.  As such, Mr. DiCostanzo's

15  assertion in his Declaration that he "believed" in December 2011 that "Prodeco

16  Technologies intended to cease its attempt to register Prodeco and move to another

17  trademark" is highly suspect.  DiCostanzo Decl. ¶ 6; Provost Decl. ¶ 19.

18          Second, Pedego claims that it only recently – purportedly in July 2012 –

19  became aware that PT would appear at Interbike as an exhibitor (despite PT's

20  appearance at two previous shows also attended by Pedego – including last year in a

21  nearby booth) and only became aware, in late August 2012, that PT would act as a

22  sponsor at Interbike.  DiCostanzo Decl. ¶14.  But Pedego's knowledge that PT was

23  going to appear at Interbike or be a sponsor is irrelevant to this analysis; what

24  matters it when Pedego had actual or constructive knowledge of PT's use of the

25

26  [5]  Pedego asserts that PT abandoned its trademark application "after learning of
    Pedego."  Motion, 6:12-13.  This is inaccurate.  PT was made aware of Pedego's

27  infringement claim as early as February 2011, but abandoned its trademark
    application in December 2011, due to a clerical error.  Provost Decl. ¶¶ 15, 17-19.

28

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

PRODECO TECHNOLOGIES' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

1   <u>allegedly infringing mark</u>. *Pharmacia Corp. v. Alcon Laboratories, Inc.*, 201 F.

2   Supp. 2d 335, 382 (D.N.J. 2002) (denying preliminary injunction; "[a]ctual or

3   constructive notice [of the use of a mark] is the governing standard for measuring

4   delay in moving for preliminary injunctive relief.").

**2.**  <u>**Pedego Provides No Evidence Of Irreparable Harm**</u>

6       Pedego's Motion is also fatally flawed in that <u>Pedego fails to present any</u>

7   <u>evidence of irreparable harm, i.e., that it has lost sales or suffered damage to its</u>

8   <u>reputation because of purported confusion between the parties' two marks</u>.

9       Courts have routinely found no irreparable harm (and denied requests for the

10   issuance of injunctions) where a plaintiff fails to offer evidence that its sales have

11   declined (or that it has suffered other comparable economic damage) as a result of

12   alleged infringement. *Rodan & Fields, LLC v. Estee Lauder Companies, Inc.*, 2010

13   WL 3910178, at *6 (N.D. Cal. Oct. 5, 2010) ("allegations of potential harm, without

14   any supporting evidence in the record, are insufficient" to support a finding of

15   irreparable harm); *Jupiter Hosting, Inc. v. Jupitermedia Corp.*, 2004 WL 3543299,

16   at *6 (N.D. Cal. Nov. 9, 2004) (no irreparable harm where no evidence of declining

17   revenues).

18       Here, Pedego asserts that actual confusion has occurred and will allegedly

19   continue, but makes no claim (other than in the most conclusory terms) of <u>lost sales</u>

20   <u>or any damage to its reputation flowing from the supposed confusion</u>. *See* Motion at

21   6:5-6 (Prodeco's appearance at Interbike "is likely to cause substantial and

22   irreparable harm to Pedego and consumers"). Such generalities do not suffice to

23   demonstrate irreparable harm. *See American Passage Media Corp. v. Cass*

24   *Communications, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985) (reversing preliminary

25   injunction for lack of irreparable harm because "affidavits from its own executives

26   . . . are conclusory and without sufficient support in facts.").

27       Moreover, in his Declaration, Mr. DiCostanzo states only that "I believe that

28   Prodeco's attendance and use of the PRODECO mark will cause a significant

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

PRODECO TECHNOLOGIES' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

1  increase in actual confusion between [the marks]." This unsupported statement, too,

2  is insufficient. Merely claiming – or even demonstrating – the existence of

3  confusion does not justify imposition of an injunction if there is no showing that

4  economic or intangible harm will result from that purported confusion. *See Sardi's*

5  *Restaurant Corp. v. Sardie*, 755 F.2d 719 (9th Cir. 1985) (court affirmed denial of a

6  preliminary injunction where there was no evidence presented at hearing that

7  plaintiff's reputation would be harmed even if public confusion regarding the parties

8  did occur.).

9      Finally, Pedego neither attempts to nor makes any showing that money

10  damages would be inadequate here. Any lost sales or business opportunities

11  (assuming they exist in this case) do not necessarily constitute an irreparable harm,

12  because they would still be measurable damages that would be compensable with

13  money. *See Aurora World, Inc. v. Ty Inc.*, 719 F.Supp.2d 1115, 1169 (C.D. Cal.

14  2009) (quoting *Reebok Intern. Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1558

15  (Fed.Cir.1994)).

16  **C.    A Balancing of the Hardships/Equities Greatly Favors Defendant**

17       **Prodeco Technologies**

18      A balancing of hardships analysis requires courts to analyze the "competing

19  claims of injury and . . . [to] consider the effect on each party of the granting or

20  withholding of the requested relief." *Flexible Lifeline Systems, Inc. v. Precision*

21  *Lift, Inc.*, 654 F.3d 989, 997 (9th Cir. 2011), *quoting Winter*, 555 U.S. at 14.

22      Economic harm in the form of lost profits, lost revenues, lost product

23  investments, and expenses that will be incurred is examined and a balancing of the

24  equities between the Plaintiff and Defendant analyzed. *Edge Games, Inc. v.*

25  *Electronic Arts, Inc.*, 745 F.Supp.2d 1101, 1118 (N.D.Cal. 2010); *Patriot Contract*

26  *Services v. U.S.*, 388 F.Supp.2d 1010, 1026 (N.D.Cal. 2005). In addition, intangible

27  loses such as loss of business goodwill and reputation, and loss of business

28  opportunities are also considered. *Advanced Rotorcraft Technology, Inc. v. L-3*

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800  •  FAX 310.566.9850

1  *Communications Corp.*, 2007 WL 437682, at *9 (N.D.Cal., Feb. 6, 2007).

2      **1.**    **Pedego's Delay Suggests that the Balance of the Hardships**

3      **Strongly Favors PT**

4      First, as discussed above, plaintiff's lengthy delay in bringing its Motion

5  seeking a preliminary injunction is an equitable factor which weighs against it in

6  analyzing the balance of hardships. *First Franklin Financial Corp.*, 356 F.Supp.2d

7  at 1055. Pedego knew about Prodeco's use of its mark on electric bikes since <u>at</u>

8  <u>least</u> early 2011 and yet did not seek a preliminary injunction until September 2012,

9  well over one year later. Provost Decl. ¶ 15. In addition, the parties both appeared

10 at the Interbike trade show in 2011 (with nearby booths, visible to one another). *Id.*

11 at ¶ 31. Pedego, however, waited until a few weeks before the 2012 Interbike Show

12 (after PT had spent tens of thousands of dollars in sunk costs to attend and sponsor

13 Interbike) to claim that it will be irreparably harmed by PT's presence at this year's

14 show. *Id.* at ¶ 34. This chronology weighs heavily in favor of PT and against the

15 imposition of an injunction.

16     **2.**    **PT Will Not Remain Financially Viable If It Cannot**

17     **Participate in the Interbike Tradeshow and Continue to Use**

18     **the "Prodeco Technologies" Name**

19     PT has spent or will spend over $90,000 in direct costs to participate in

20 Interbike. Provost Decl. ¶ 34. If Prodeco is unable to participate in Interbike,

21 however, its losses would go far beyond the $90,000 that it is expending to prepare

22 for and sponsor the show. PT would be unable to remain financially solvent if

23 barred from Interbike. *Id.* ¶ 39.

24     Based on internal data, PT projects that it will have a net profit of at least

25 $1.65 Million from its 2013 line of bikes. *Id.* at ¶ 37. At least 70% of these profits

26 will be directly generated by orders placed at Interbike. *Id.* Additionally, if barred

27 from Interbike, PT would have difficulty getting the remaining 30% of its projected

28 model year 2013 orders because of reputational damage and lost credibility in the

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  marketplace. *Id.* Dealers and customers look to product warranties to protect
2  themselves should electric bikes malfunction after purchase and are fearful of
3  placing orders with companies that they believe may have financial or legal
4  problems which would jeopardize warranty programs or the ability of the bike
5  company to complete future repairs. *Id.*

6       In addition to lost profits, if unable to attend Interbike, PT would lose nearly
7  $300,000 in deposits that it has already paid to suppliers. *Id.* at ¶ 38. Without the
8  influx of cash from orders at Interbike, PT would be unable to pay the remaining
9  amounts owed to the suppliers and would lose those deposits in their entirety. *Id.*
10 Moreover, PT would be unable to pay down its outstanding $2.4 Million credit line
11 and loans. *Id.*

12      Moreover, if PT were unable to use the Prodeco Technologies name beyond
13 the Interbike tradeshow, the economic damage to the company would also be fatal.
14 Provost Decl. ¶ 40. PT has already ordered some 5,000 bike frames with the name
15 "Prodeco Technologies" on them. *Id.* These aluminum frames cannot be changed
16 without the frames being damaged. *Id.* The costs already paid for these frames
17 would simply have to be written off by PT. *Id.* at ¶ 40. There would be additional,
18 large costs associated with changing the name on the company's website and other
19 advertising materials. *Id.* In addition, as discussed above, PT would not receive its
20 projected bike orders for the 2013 model year and would not be able to pay down its
21 debt. *Id.* at ¶¶ 38-38. PT would also suffer tremendous reputational harm in that it
22 would have to delay or cancel pending orders, inform dealers and customers that it
23 was operating under a different name and also that they would have to accept (if any
24 orders could in fact be filled) bikes with different model names. *Id.* at ¶ 40.

25      **D.    A Preliminary Injunction Would Not Serve the Public Interest**
26      An injunction will not be issued if it does not serve the public interest. *See*
27 *Winter*, 555 U.S. at 20. Courts routinely find that, where there is a lack of consumer
28 confusion in trademark cases, a preliminary injunction will not serve the public

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  interest because such an injunction would only result in depriving consumers of a

2  choice of products and inhibiting competition. *International Jensen, Inc. v.*

3  *Metrosound U.S.A., Inc.*, 4 F.3d 819, 827 (9th Cir. 1993); *Illinois Tool, Inc. v. Grip-*

4  *Pak, Inc.*, 906 F.2d 679, 684 (Fed.Cir.1990) (finding that the public interest in the

5  "continuing right to compete, which must be seen as legitimate . . . ," disfavors

6  preliminary injunction when there is only a small likelihood of success in proving

7  infringement at trial).

8      Here, because the likelihood of consumer confusion has not been

9  demonstrated, the public interest favors denying Pedego's request for an injunction

10  to prevent unnecessary restraints on competition.

11  **IV.   A BOND IN THE AMOUNT OF $ 5 MILLION SHOULD BE**

12  **REQUIRED TO BE POSTED BY PEDEGO IN THE EVENT THIS**

13  **MOTION IS GRANTED**

14      Federal Rule of Civil Procedure 65(c) requires the posting of a bond by a

15  party obtaining a preliminary injunction: "[t]he court may issue a preliminary

16  injunction . . . **only if** the movant gives security in an amount that the court

17  considers proper to pay the costs and damages sustained by any party found to have

18  been wrongfully enjoined or restrained." F.R.C.P. 65(c) (emphasis added). <u>A bond</u>

19  <u>is required regardless of the merits of the plaintiff's case.  As such, even in the</u>

20  <u>unlikely event that the Court issues an injunction here, a bond</u> **must** <u>be posted.</u>

21      Pursuant to F.R.C.P. 65(c), the amount of the bond is within the Court's

22  discretion, but is generally "[t]he amount . . . sufficient to cover loses and damages

23  incurred or suffered by the party enjoined if it turns out that the injunction should

24  not have been granted." *Ford Motor Co. v. Ultra Coachbuilders Inc.*, 2000 WL

25  33256536, at *10 (C.D.Cal., July 11, 2000), *citing DEP Corp. v. Opti-Ray, Inc.*, 768

26  F.Supp. 710, 718 (C.D.Cal. 1991).

27      Accordingly, a bond should be required to cover all of PT's potential losses,

28  even if those losses are in the millions of dollars (which they would be). *Lewis*

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  *Galoob Toys v. Nintendo of America, Inc.*, 1991 WL 1164068, *4 (N.D.Cal., Mar.

2  27, 1991) (requiring moving party to post a $15 million bond); *A&M Records, Inc.*

3  *v. Napster, Inc.*, 239 F.3d 1004, 1028 (9th Cir. 2001) (requiring a $5 million bond);

4  *The Research Foundation of State University of New York v. Mylan*, 723 F.Supp.2d

5  638, 664 (D.Del. 2010) (requiring a $26 million bond); *International Equity*

6  *Investments, Inc. v. Opportunity Equity*, 2006 WL 1116437, *5 (S.D.N.Y., Apr. 26,

7  2006) (approving a $5 million bond); *Stertz v. Gulf Oil Corp.*, 1984 WL 2114

8  (E.D.N.Y., June 14, 1984) (requiring $42.4 million bond).

9      Realistically, PT's losses should an injunction be issued would be in the range

10  of at least $5,000,000 and, if the Court does grant the requested injunction, a bond in

11  that amount should be ordered posted.  Provost Decl. ¶¶ 37-41.  The concrete and

12  quantifiable damage to PT far outweighs any alleged harm that Pedego will suffer

13  due to the purported confusion caused by PT's presence at the Interbike trade show

14  or PT's continued use of the "Prodeco Technologies" name while this case is

15  pending.

16  **V.    CONCLUSION**

17      For the above reasons, Prodeco Technologies respectfully requests that the

18  Court deny Pedego's Motion for Preliminary Injunction.

19

20  DATED:  September 10, 2012        KINSELLA WEITZMAN ISER KUMP &
                                                    ALDISERT LLP
21

22

23                                  By:   /s/ Jennifer J. McGrath
                                                Jennifer J.McGrath
24                                              Attorney for Defendant PT

**CERTIFICATE OF SERVICE**

I hereby certify the following: I am over the age of 18 years and am not a party to the above-captioned action. I am a registered user of the CM/ECF system for the United States District Court for the Southern District of California.

On September 10, 2012, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. To the best of my knowledge, all counsel to be served in this action is registered CM/ECF users and will be served by the CM/ECF system.

I declare under penalties of perjury under the laws of the United States that the foregoing is true and correct.

DATED:  September 10, 2012         KINSELLA WEITZMAN ISER KUMP &
                                   ALDISERT LLP


                                   By:  /s/ Jennifer J. McGrath
                                        Jennifer J. McGrath
                                        Attorney for Defendant PT

PRODECO TECHNOLOGIES' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850