UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| PEDEGO, LLC,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>ALLIANCE WHOLESALERS, INC.,<br>d/b/a PRODECO TECHNOLOGIES,<br><br>　　　　Defendants. | Case No.: SACV 12-01106-CJC(JPRx)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

**I.  INTRODUCTION & BACKGROUND**

　　　Plaintiff Pedgeo, LLC ("Pedego") brought this suit against Defendant Alliance Wholesalers, Inc. d/b/a Prodeco Technologies ("PT") on July 6, 2012, alleging federal and common law trademark infringement, false designation of origin, violation of California Business and Professions Code section 17200, common law unfair competition, and requesting the denial or cancellation of a trademark application.  (*See*

Compl.)  Pedego is a corporation that designs, manufactures, and markets electric bicycles.  (*Id.* ¶ 7.)  Pedego alleges that it is the owner of the trademark and designation "PEDEGO," and that it has made use of this mark in conjunction with the sale of its electric bicycles since March 11, 2009.  (*Id.* ¶¶ 8–9.)  PT is also in the electric bicycle business, and produces and sells its own electric bicycle model under the name "Prodeco."  (*Id.* ¶ 11.)  Pedego has been aware of PT's use of the "Prodeco" name since at least May of 2011, when PT filed a trademark application with the U.S. Patent and Trademark Office ("USPTO") for "Prodeco Technology."  (DiConstanzo Decl. ¶ 5.)  In response to this application, on May 23, 2011, Pedego submitted a Letter of Protest to the USPTO.  (*Id.*)

Pedego is an annual exhibitor at the "InterBike" tradeshow for bicycles and the biking industry.  (DiConstanzo Decl. ¶ 2.)  Both Pedego and PT plan to exhibit their respective models of electric bicycles at the upcoming "InterBike" tradeshow in Las Vegas, Nevada on September 19–21.  (Pl.'s Mot., at 1.)  According to Pedego, permitting PT to exhibit its "Prodeco" electric bicycle at the InterBike tradeshow is likely to cause massive confusion between the two brands, and irreparable harm to Pedego  (*Id.* at 2.)  Before the Court is Pedego's motion for a preliminary injunction.  For the reasons explained below, Pedego's motion is DENIED.[1]

## II. ANALYSIS

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in

---

[1]  Having read and considered the papers presented by the Plaintiff, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for September 17, 2012, at 1:30 p.m. is hereby vacated and off calendar.

the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 129 S.Ct. 365, 374 (2008); *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). A preliminary injunction is an extraordinary and drastic remedy that should only be awarded upon a clear showing that the moving party is entitled to relief. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam).

First, Pedego has not demonstrated a likelihood of success on the merits of its trademark infringement claims, unfair competition claim, or false designation of origin claim.[2] "To establish infringement of a registered trademark, the trademark holder must show that it is (1) the owner of a valid, protectable mark, and (2) that the alleged infringer is using a confusingly similar mark." *Grocery Outlet Inc. v. Albertson's Inc.*, 497 F.3d 949, 951 (9th Cir. 2007) (citing 15 U.S.C. § 1114(1)). While Pedego has established that it is the owner of a valid and protectable mark, (*see* Dicostanzo Decl. Exh. A), it has not established a likelihood of confusion between its electric bicycle model and PT's competing product. To determine whether a likelihood of confusion exists, the Court applies the factors set forth in *AMF Incorporated v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979). These factors are: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Id.* at 348–49.

Upon considering these factors, the Court concludes that Pedego has not demonstrated a likelihood of success on the merits on the essential element of likelihood of confusion. The first *Sleekcraft* factor is neutral. Pedego's trademark is not

---

[2] Regardless of how the violation is phrased—infringement, unfair competition, or false designation of origin—the test for determining a violation is the same: "is there a likelihood of confusion." *New W. Corp v. NYM Co. of Ca.*, 595 F.2d 1194, 1201 (9th Cir. 1979).

exceedingly strong, but it is a coined term that is not defined. The mark contains the prefix "ped" and the suffix "go," which, when viewed in the context of the electric bicycle industry, do not appear exceedingly unique. Indeed, PT presented evidence that these prefixes and suffixes are common in the company names of bicycle and electric vehicle manufacturers. (Def. Opp'n., at 9; Provost Decl. ¶¶ 22–23.)

Second, the "proximity of the goods factor" is neutral or slightly in favor of Pedego. Both Pedego and PT market their products nationally, and both intend to exhibit and market their products at the upcoming "InterBike" tradeshow. However, Pedego and PT appear to market their products to two distinct demographics. While Pedego markets their electric bicycles to consumers with an average age of 59 for men and 58 for women, PT markets it bikes to a younger crowd, primarily under the age of 50. (Provost Decl. ¶¶ 10, 12.)

The third factor weighs in favor of PT because, although both names sound relatively similar, they are visually distinct. Pedego's mark appears with vertical, thick, and distinctive orange lettering, with the words "electric bikes" underneath. In comparison, PT's "Prodeco" insignia appears with thin, italicized black lettering, with the word "technologies" in small font, underneath and to the side. (Diconstanzo Decl. Exh. E; Def. Opp'n. at 8.)

The fourth factor is neutral or weighs slightly in favor of PT because the evidence submitted by Pedego does not conclusively establish the actual confusion required for a preliminary injunction. Pedego claims that PT's "use of the PRODECO mark has caused extensive actual confusion with the PEDEGO mark . . . [and] customers have admitted their confusion in email, online publications, telephone calls and advertisements." These claims are an overstatement of the evidence submitted. In support of its argument that consumers are actually confused by the two marks, Pedego submits phone logs which it

claims are calls to Pedego by individuals seeking information on Prodeco brand electric bicycles. (Diconstanzo Decl. ¶ 10, Exh. D.) But an examination of the phone logs does not indicate whether the callers were in fact confused by the two marks. Rather, the phone logs simply list telephone numbers, the time of the call, and location of the caller. (*Id*. Exh. D.) While Pedego does submit what appears to be a description by one of its customer service personnel of a call from a confused customer, it is unclear who wrote this description and when. (*See id*.) Without more, the phone logs and the description are unreliable hearsay. Next, Pedego submits several emails which it claims demonstrate actual confusion. (*Id*. Exh. E.) In the first email, an individual asks whether "you have or will you do repairs on a prodeco phantom x electric bike." (*Id*.) Such an inquiry is entirely inconclusive, and is not evidence of actual confusion. Rather than being confused, this consumer could just as easily have been inquiring as to whether Pedego would service a competitor's product. Pedego also submits several emails from bike dealers which were allegedly misdirected to Pedego. (*See id*.) These emails are similarly insufficient to establish significant confusion.[3] Pedego also submits an article regarding electric bicycles and two Craigslist.com ads which purportedly confuse the two marks. (*Id*. Exh. F, G.) But this evidence again is not conclusive proof of significant confusion to justify the drastic relief sought. Moreover, PT has provided evidence indicating that since February of 2012, it has not received a single call from a customer confused by the two marks. (Neal Decl. ¶¶ 2–3; Lindsay Decl. ¶¶ 2–3.)

The marketing channels factor weighs in favor of Pedego because the evidence indicates that the two businesses do use the same marketing channels, including the internet and the upcoming "InterBike" tradeshow. (Diconstanzo Decl. ¶ 7.)

---

[3] In its Reply brief, Pedego submits the declaration of Alan J. Levine, the founder of Hybrid Pedals. (Levin Decl. ¶ 1.) In his declaration, Mr. Levine states that he incorrectly believed that Pedego was sponsoring the InterBike tradeshow, when PT is actually the sponsor. (*Id*. ¶¶ 3–4.) Regardless, Mr. Levine's apparent confusion does not corroborate the emails submitted in support of Pedego's motion that allegedly demonstrate actual confusion.

The factor addressing the degree of purchaser care is neutral or weighs slightly in favor of PT. While PT contends that its electric bicycles sell for an average of $1,200, the Court has not been provided with any reliable evidence indicating the average sale price of Pedego's electric bicycles. Nevertheless, when purchasing expensive items, consumers can be expected to be more discerning and less susceptible to confusion. *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1060 (9th Cir. 1999).

As to the seventh factor, there is no evidence that PT willfully chose to use the mark "Prodeco" in order to trade off the good will or market reputation of Pedego. Indeed, Pedego does not even address this factor in its motion. As PT explains, "Prodeco" is a combination of the founders' last names of "*Pro*vost," "*De*l Aguilla," and "A*co*sta." The mark is also, apparently, a variant of one of the founder's former companies, "Eco Tech."

Finally, the likelihood of expansion factor weighs slightly favor of Pedego. Both parties market electric bikes in the same or overlapping markets. The expansion of their product lines, including accessories, has the potential to increase whatever confusion presently exists. On balance, the *Sleekcraft* factors weigh slightly in favor of PT and suggest no likelihood of confusion.

Second, Pedego has not shown that it is likely to suffer irreparable harm in the absence of preliminary relief as to any of the alleged infringement or unfair competition. Where there is a delay in seeking a preliminary injunction, courts have consistently found no irreparable harm at stake. *See Kerr Corp. v. North American Dental Wholesalers, Inc.*, No. SACV 11-0313, 2011 WL 2269991, at *3 (C.D. Cal. Jun. 9, 2011); *Givemepower Corp. v. Pace Compumetrics, Inc.*, No. CV 07-157, 2007 WL 951350, at *7 (S.D. Cal. Mar. 23, 2007).

The context under which this motion is brought, and the timeline of events described in the moving papers, reveals a lack of urgency. Pedego has been aware of PT's use of the "Prodeco" mark since as far back as May 23, 2011, when Pedego filed a Letter of Protest with the USPTO regarding PT's trademark application. (Diconstanzo Decl. ¶¶ 3–4.) According to PT, Pedego was also aware that PT attended the 2011 InterBike tradeshow, selling bicycles bearing its name. (*Id*. ¶ 3.) Yet Pedego waited until July 6, 2012 to file its complaint in this action, and until September 4, 2012, to file the instant motion for a preliminary injunction. While Pedego alleges that it acted diligently after receiving an inquiry from an apparently confused retailer on August 2, 2012, this does nothing to change the fact that Pedego has been aware of PT's mark and the potential for confusion for over a year. (*See* Pl.'s Reply, at 5.) Pedego has not persuaded the Court that the extraordinary remedy of an injunction is warranted to protect it from any irreparable harm following its long delay in seeking an injunction. Such a delay necessarily suggests that a lack of urgency exists. *Kerr*, 2011 WL 2269991, at *3; *see also Hansen Beverage Co. v. Vital Pharmaceutical, Inc.*, No. CV 08-0545, 2008 WL 5427601, *6 (S.D.Cal. Dec.30, 2008) ("Delays in requesting an injunction, whether for months or years, tend to negate a claim of irreparable harm.")

Third, the balance of equities does not weigh in favor of Pedego. If Pedego's injunction is not granted, the hardship it suffers will not be significant because there is little likelihood of confusion between the two companies. Consequently, there is little risk of PT having much effect on the goodwill and reputation of Pedego. In contrast, if the preliminary injunction is granted in error PT may be subject to serious harm. PT has or will spend over $90,000 in direct costs to participate in the InterBike tradeshow. (Provost Decl. ¶ 34.) PT projects that at least 70% of its 2013 line of bicycles will directly result from orders placed at the tradeshow. (*Id*. ¶ 37.) In addition to lost profits, if unable to attend the tradeshow, PT will lose close to $300,000 in deposits it has already paid to suppliers. (*Id*. ¶ 38.) Such a loss in profits will make PT unable to pay down its

outstanding $2.4 million credit line and loans.  (*Id.*)  Indeed, PT contends that if it is barred from participating in the InterBike tradeshow it will be unable to remain financially solvent.  (*Id.* ¶ 36.)  Accordingly, the balance of the equities tips significantly in favor of denying the injunctive relief sought.

Finally, Pedego has not demonstrated that a preliminary injunction is in the public's interest.  Given that there appears to be little likelihood of confusion at this point, the public is not at a risk of being deceived by PT's use of the "Prodeco" mark.  The public, therefore, is not being harmed by PT's continuing operation, pending resolution of this matter through the litigation process.  In contrast, granting the preliminary injunction would harm the public by forcing a business to take actions that may severely harm its operations and possibly even force it out of business.

**III.  CONCLUSION**

For the foregoing reasons, Pedego's motion for a preliminary injunction is DENIED.

DATED: September 14, 2012

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE